UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN CAMILLE MANDENG,

    Plaintiff,

    v().

UBER COMPANY,

    Defendant.

Civil Action No. 24-3488 (JDB)

## MEMORANDUM OPINION & ORDER

Jonathan Camille Mandeng, a former driver for the rideshare company Uber, sued Uber in D.C. Superior Court. After removing the action to this Court, Uber moves to compel arbitration on the basis of an arbitration agreement Mandeng signed as part of his employment. For the reasons stated below, the Court grants the motion.

**Background**

Mandeng filed this complaint pro se in D.C. Superior Court. See Compl. [ECF No. 1-3]. Though his allegations were not entirely clear, he seemed to allege Uber engages in widespread mistreatment of its drivers and steals their wages. Id. As relief, he asked the court to "[u]nlock [his] Uber App, review the treatment of drivers in general," "put[] an end to all the abuses" drivers suffer at the hands of Uber, and award him $150,000. Id. at 1.

Invoking diversity jurisdiction—more than $75,000 was in controversy between Uber, a citizen of Delaware and California, and Mandeng, a citizen of D.C., see 28 U.S.C. § 1332(a)(1)—Uber removed the case to this Court, see Notice of Removal [ECF No. 1] at 2–3.

Soon thereafter, Uber moved to compel arbitration and to stay this Court's proceedings in the meantime. See Def.'s Mot. to Compel Arbitration of Pl.'s Compl. & Stay Proceedings Pending

1

Arbitration [ECF No. 6] ("Mot."). In support, Uber provided copies of agreements Mandeng signed as a condition of his employment. See Decl. of Deborah Soh [ECF No. 6-2] ("Soh Decl.") ¶¶ 5, 17–19; Portier Platform Access Agreement [ECF No. 6-9] ("PPAA"); Rasier Platform Access Agreement [ECF No. 6-10] ("RPAA"). Each contains an arbitration provision alerting Mandeng in capital and bolded lettering that, by assenting to the agreement, he was agreeing to resolve disputes with Uber "**THROUGH FINAL AND BINDING ARBITRATION**." See PPAA ¶ 13; RPAA ¶ 13. The arbitration provisions explain that they apply "to any legal dispute, past, present or future, arising out of or related to [Mandeng's] relationship with" Uber. PPAA ¶ 13.1(a); RPAA ¶ 13.1(a). Such disputes, the provisions make clear, include disputes about, among other things, "compensation, minimum wage, expense reimbursement, overtime," and more. PPAA ¶ 13.1(c); RPAA ¶ 13.1(c). Where the arbitration provision applies, it requires "all claims whether brought by" Mandeng or Uber "to be resolved only by an arbitrator . . . and not by way of court or jury trial." PPAA ¶ 13.1(b); RPAA ¶ 13.1(b). And it delegates to the arbitrator not only the underlying merits of the claim but also questions about the scope of the arbitration provision, providing that an arbitrator shall determine disputes "relating to the interpretation, application, formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision." PPAA ¶ 13.1(b); RPAA ¶ 13.1(b).

      Binding oneself to arbitration, the agreements explain, is "not a mandatory condition" of contracting with Uber. PPAA ¶ 13.8(a); RPAA ¶ 13.8(a). So if Mandeng did not wish to forfeit his right to come to court, he had 30 days after signing the agreements to email Uber indicating as much. PPAA ¶ 13.8(a); RPAA ¶ 13.8(a). According to Uber's records, he did not do so. Soh Decl. ¶ 22.

Uber filed its motion to compel arbitration on December 23, 2024. See Mot. More than four months then passed without word from Mandeng. On May 12, 2025, the Court instructed Mandeng that, if he wished to oppose the motion, he had until June 2 to do so. See Min. Order, May 12, 2025. Mandeng did not respond.

**Analysis**

"[A]rbitration agreements are simply contracts." Coinbase, Inc. v. Suski, 602 U.S. 143, 148 (2024). The parties to arbitration agreements thus have wide discretion in fixing their terms and, as a result, can opt to arbitrate disputes not only about "the merits" of a case but also gateway questions like "whether they agreed to arbitrate the merits" and even "who should have the primary power to decide" whether they agreed to arbitrate the merits. Id. at 148–49 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). Where an arbitration agreement delegates such gateway questions in "clear and unmistakable" terms, a court's only role is to determine "whether a valid arbitration agreement exists"; it "may not decide an arbitrability question that the parties have delegated to an arbitrator." Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 69 (2019).

The agreements here delegate questions of arbitrability to an arbitrator in clear and unmistakable terms. The agreements explain that an arbitrator shall resolve disputes "relating to the interpretation, application, formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision." PPAA ¶ 13.1(b); RPAA ¶ 13.1(b). Nearly identical language has been held to provide clearly and unmistakably for the arbitration of arbitrability. See, e.g., Commc'ns Workers of Am. v. AT&T Inc., 6 F.4th 1344, 1347 (D.C. Cir. 2021) ("existence, scope, or validity of the arbitration agreement"); Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1209 (9th Cir. 2016) ("enforceability,

3

revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision"); Def.'s Mem. Supp. Mot. [ECF No. 6-1] at 9–11 (collecting cases).

So the only remaining question for the Court is "whether a valid arbitration agreement exists." See Henry Schein, 586 U.S. at 69. It does, as Uber has provided uncontroverted evidence of "an offer, an acceptance, and valuable consideration." See Osvatics v. Lyft, Inc., 535 F. Supp. 3d 1, 10 (D.D.C. 2021) (quoting Dixon v. Midland Mortg. Co., 719 F. Supp. 2d 53, 57 (D.D.C. 2010)). "It is well established that [Uber's] method of obtaining drivers' assent to its Terms of Service—presenting the terms of the agreement and requiring users to click 'I Agree' before they can access the service—constitutes a valid means of offer and acceptance." Id. at 11 (cleaned up); see Soh Decl. ¶¶ 8–11 (explaining Uber's process); Ex. 2 [ECF No. 6-4] (displaying the "I Agree" message). As for consideration, the arbitration provision is a two-way street: Mandeng exchanged his agreement to arbitrate for Uber's agreement to the same. See Shatteen v. Omni Hotels Mgmt. Corp., 113 F. Supp. 3d 176, 181 (D.D.C. 2015) ("Mutual agreements to arbitrate are independently sufficient forms of consideration." (cleaned up)). And Mandeng also came away from the exchange with "access to [Uber's] application as a driver." Osvatics, 535 F. Supp. 3d at 11.

In sum, the Court has a very limited role in this case: to answer whether "the parties subject[ed] some set of issues to an arbitrator for resolution," and whether they "clearly and unmistakably assign[ed] to an arbitrator the authority to decide whether disputes fit within that set of issues." Commc'ns Workers of Am., 6 F.4th at 1349. Having reached a plain affirmative answer to both, the Court must leave to the arbitrator the question whether this "particular dispute is arbitrable." Id. And it must "stay the trial of the action until" the arbitration has run its course. 9 U.S.C. § 3; see Smith v. Spizzirri, 601 U.S. 472, 478 (2024) ("When a district court finds that a

4

lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the [Federal Arbitration Act] compels the court to stay the proceeding.").

## Conclusion

For the above reasons, the Court hereby **GRANTS** the motion to compel arbitration and to stay these proceedings pending arbitration.  **SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: June 25, 2025